```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION


MICHAEL R. DIEMER,

            Plaintiff,

      vs.                           Civil Action 2:12-cv-610
                                    Judge Frost
                                    Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
```

### REPORT AND RECOMMENDATION

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income.  This matter is now before the Court on *Plaintiff Michael R. Diemer's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 9, *Defendant's Memorandum in Opposition to Plaintiff's Statement of Specific Errors* ("*Commissioner's Response*"), Doc. No. 10, and *Plaintiff Michael R. Diemer's Reply to Defendant's Memorandum in Opposition* ("*Plaintiff's Reply*"), Doc. No. 11.

Plaintiff Michael R. Diemer filed his current application for disability insurance benefits on January 29, 2009, and his current application for supplemental security income on February 2, 2009, alleging that he has been disabled since November 19, 1985.  *PAGEID*

134, 138.[1] The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on November 17, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Hermona C. Robinson, who testified as a vocational expert, and Lisa Diss, who testified as a witness about "the severity of otherwise already established diagnoses." *PAGEID* 45, 74. In a decision dated November 30, 2010, the administrative law judge concluded that plaintiff was not disabled from December 30, 2004, through the date of the administrative decision. *PAGEID* 39. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 14, 2012. *PAGEID* 19.

Plaintiff was 27 years of age on the date of the administrative law judge's decision. *See PAGEID* 39, 134. Plaintiff has a marginal education, is able to communicate in English, and has past relevant work as a laborer, lawn and garden clerk, and crew member. *PAGEID* 38. Plaintiff was last insured for disability insurance purposes on September 30, 2010. *PAGEID* 30. He has not engaged in substantial gainful activity since his alleged date of onset. *Id*.

## II. Medical Evidence

Dennis A. Marikis, Ph.D., evaluated plaintiff on February 17, 2009, for purposes of determining Medicaid eligibility. *PAGEID* 301-05. On the WAIS-III, plaintiff's scores were indicative of a person of average intelligence with no significant and profound deficits but

---

[1] Plaintiff's prior applications were denied on December 30, 2004 and have not been reopened. *PAGEID* 28.

2

with some problematic aspects in social awareness and social connection. *PAGEID* 302. The MMPI-2 included an elevated F-score and reflected a "grossly over-stated and focused emphasis on pathology presenting himself in an unfavorable light." *Id*. According to Dr. Marikis, plaintiff "is inclined to have more of a chronic dysthymic attitude, which is more of a 'poor me' perspective." *Id*. Dr. Marikis also observed "levels of anti-social traits [that] suggest some difficulties at any kind of emotional depth." *Id*. In terms of interpersonal functioning, plaintiff "has very strong anti-social functioning. He is defined as extremely odd and peculiar with really eccentric aspects to his personality and poor social skills." *Id*. Dr. Marikis also noted boundary issues. *Id*.

On Axis I, Dr. Marikis diagnosed "[h]igh level malingering with fictitious disorder primarily psychological. He does show some patterns as consistent with attention difficulties and delusional disorder. He also has a chronic dysthymic disorder." *PAGEID* 303. On Axis II, Dr. Marikis diagnosed borderline personality disorder. Dr. Marikis assigned a Global Assessment of Functioning ("GAF") score of 45. *Id*. Dr. Marikis opined that "malingering is a factor in [plaintiff's] perception of self" but that plaintiff "does not have the social capacity and interpersonal ability to manage the world of work. However, there very well may be aspects in which he could be affectively trained in the future to do." *Id*.

Dr. Marikis assessed plaintiff's mental residual functional capacity ("RFC"), in which he concluded that plaintiff was moderately limited in his ability to (1) perform activities within a schedule,

3

maintain regular attendance, and be punctual within customary tolerances, (2) sustain an ordinary routine without special supervision, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (4) interact appropriately with the general public, (5) accept instructions and respond appropriately to criticism from supervisors, (6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (7) respond appropriately to changes in the work setting, (8) travel in unfamiliar places or use public transportation, and (9) set realistic goals or make plans independently of others. *PAGEID* 304. Plaintiff was markedly limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*.

On April 7, 2009, John S. Reece, Psy.D., consultatively examined plaintiff for purposes of state disability benefits. *PAGEID* 306-11. Plaintiff reported that his inability to focus and to accomplish repetitive tasks kept him from working. *PAGEID* 307. He reported no difficulties following instructions at work or getting along with co-workers or supervisors. *Id*. He had not worked for more than a year because of transportation problems, because of a move and because he had been fired for "eating a biscuit on the job." *Id*. Dr. Reece characterized plaintiff's concentration and persistence as satisfactory, and noted that plaintiff worked at an average pace and had no difficulty understanding or following instructions. *PAGEID* 308.

Dr. Reece diagnosed Asperger's disorder, attention deficit disorder, obsessive-compulsive disorder, and inability to focus, and assigned a GAF score of 60. *PAGEID* 309. According to Dr. Reece, plaintiff was of average intelligence, would be able to live independently, and could make decisions on a daily basis. *Id*. Dr. Reece could not make an Axis II diagnosis. *Id*.

Dr. Reece opined that plaintiff was mildly impaired in his ability to (1) relate to others, including co-workers and supervisors, (2) maintain attention, concentration, persistence and pace to perform simple repetitive tasks, (3) withstand the stress and pressures associated with daily work activity, and (4) manage his funds, but he would likely not need assistance managing his money. *PAGEID* 310. Plaintiff's ability to understand, remember and follow instructions was satisfactory and not impaired. *Id*.

Karla Voyten, Ph.D., reviewed the medical record in May 2009 on behalf of the state agency and completed a Psychiatric Review Technique form. *PAGEID* 312-25. According to Dr. Voyten, plaintiff had a mild limitation in maintaining social functioning and maintaining concentration, persistence, or pace, and no limitation in his activities of daily living. *PAGEID* 322. Plaintiff was not severely impaired by a mental illness. *PAGEID* 325. In making this determination, Dr. Voyten found that plaintiff's allegations of functioning were partially credible, at best, and likely not credible. *Id*. She noted that plaintiff "is functional, goes to the library, uses the internet, chats online, and essentially follows his interests freely." *Id*.

5

Tonnie Hoyle, Psy.D., reviewed the medical record on July 24, 2009 on behalf of the state agency and affirmed Dr. Voyten's assessment. *PAGEID* 326.

From January through October 2009, plaintiff underwent approximately 15 treatments at Moundbuilders Guidance Center by social workers Scott Allen Gatton, M.Div., LSW., and Carol Crane, QMHS. *PAGEID* 275-99, 413-35. He cancelled or missed approximately 6 treatment sessions. *See PAGEID* 275-77, 280, 419, 429. In January 2009, Mr. Gatton diagnosed R/O obsessive compulsive disorder, bipolar I, mania, and a reported history of Asperger's disorder. *PAGEID* 298.

Suseela Nalluri, M.D., treated plaintiff on August 1 and 4, 2010. *PAGEID* 327-33. Dr. Nalluri found that plaintiff's thought process was logical, his mood was euphoric, he was non-aggressive and had a full affect, his behavior was impulsive and hyperactive, and he demonstrated poor judgment. *PAGEID* 329-30. Dr. Nalluri assigned a GAF score of 50 and diagnosed "r/o ADHA," "r/o pervasive developmental disorder not otherwise specified," "r/o BPAD" and "r/o MR." *PAGEID* 330. On October 30, 2010, Dr. Nalluri completed a mental RFC questionnaire, in which she opined that plaintiff had marked limitations in 16 of 16 areas of social interaction, sustained concentration and persistence, and adaptation. *PAGEID* 401-404.[2] Dr. Nalluri further opined that plaintiff's condition would likely deteriorate if he were under stress. The doctor also concluded that plaintiff could not manage his own funds and would have marked

---

[2] Dr. Nalluri defined a "marked limitation" as an impairment that seriously affects one's ability to function in a work setting. *PAGEID* 401.

6

limitations in social interaction even where only minimal contact or interaction with others was required.  *PAGEID* 401-03.

Plaintiff underwent treatment on eight occasions between August 16, 2010 and October 19, 2010, by Jessica Wade, M.A., PC-CR, at Mid-Ohio Psychological Services.  *PAGEID* 368-73.  The administrative record does not include treatment notes for the eight sessions, but it does include a goal and objective for each session.  Ms. Wade diagnosed Asperger's disorder, attention deficit/hyperactivity disorder, predominantly hyperactive-impulsive type, and personality disorder, NOS, with antisocial features.  *PAGEID* 368.  Ms. Wade assigned a GAF score of 48.  *Id*.

Claire Robitaille, Ph.D., and Ms. Wade completed a mental RFC questionnaire on November 1, 2010.  *PAGEID* 409-12.  They opined that plaintiff had mild, moderate and marked limitations in areas of social functioning, but fewer limitations if only minimal contact or interaction with others were required, because plaintiff "demonstrates capability to focus and maintain attention on tasks when absent opportunities to socialize."  *PAGEID* 409-10.  Plaintiff also had mild, moderate and marked limitations in areas of sustained concentration, pace and adaptation.  *PAGEID* 410-11.  Dr. Robitaille and Ms. Wade further opined that plaintiff was unable to manage his own funds and that his condition would likely deteriorate if he were subjected to stress.  *PAGEID* 411.

A Conners' Continuous Performance Test II was administered on September 13, 2010, *PAGEID* 374-83, and again on October 12, 2010, *PAGEID* 384-90.  The tests indicated that plaintiff had an attention-

7

related deficit. *PAGEID* 382. The record does not indicate who administered the tests, nor is there any indication that the tests were reviewed by a medical professional.

### III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of attention deficit hyperactivity disorder, Asperger's syndrome, borderline personality disorder with antisocial features, bipolar I mania, chronic dysthymic disorder also diagnosed as depression, and obsessive compulsive disorder. *PAGEID* 30. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") for medium work,

> except that he can only frequently use ramps and stairs; occasionally use ladders, ropes and scaffolds; frequently balancing, stooping, kneeling, crouching and crawling; must avoid concentrated exposure to moving machinery and unprotected heights; he is limited to positions that require only the ability to understand, remember and carry out simple instructions, with only occasional and superficial interaction with the general public and co-workers.

*PAGEID* 31-33. Although this RFC precluded plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy, including such jobs as maintenance laborer, hand packager, and janitor. *PAGEID* 38-39. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from December 30, 2004, through the date of the administrative law judge's decision. *PAGEID* 39.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge improperly evaluated the medical evidence of record. Plaintiff specifically argues that the administrative law judge erred by failing to follow the treating physician rule when

9

evaluating the opinions of Dr. Nalluri and Ms. Wade, by failing to articulate the weight given to the opinions of the state agency reviewers, Dr. Voyten and Dr. Hoyle, by rejecting a portion of Dr. Marikis's opinion, and by assigning considerable weight to Dr. Reece's opinion.

    A.    **Dr. Nalluri and Ms. Wade**

Plaintiff maintains that the administrative law judge erred in evaluating the opinions of Dr. Nalluri and Ms. Wade because he did not follow the treating physician rule. *Statement of Errors*, pp. 10-13. The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinions of only treating sources are entitled to controlling weight; a treating source is a "medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902. Generally, the United States Court of Appeals for the Sixth Circuit has declined to find that an ongoing treatment relationship exists after just two or three examinations. *See, e.g.*, *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition."); *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *9 (6th Cir. Nov. 15, 2000) (finding that a doctor did not qualify as a treating source and did not have an ongoing treatment relationship with the claimant

even though the doctor had examined claimant three times over a two-year period). *See also Helm v. Comm'r of Soc. Sec.*, No. 10-5025, 2011 WL 13918, at *3 n.3 (6th Cir. Jan. 4, 2011) (noting that "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source – as opposed to a nontreating (but examining) source").

Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

11

> obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Nalluri treated plaintiff twice in August 2010 and opined in October 2010 that plaintiff had marked limitations in 16 of 16 areas of social interaction, sustained concentration and persistence, and adaptation.  *PAGEID* 327-33, 401-04.  Ms. Wade treated plaintiff eight times between August 16, 2010 and October 19, 2010, at Mid-Ohio Psychological Services.  *PAGEID* 368-73.  Ms. Wade and Dr. Robitaille completed a mental RFC questionnaire on November 1, 2010, *PAGEID* 409-12, and opined that plaintiff had mild, moderate and marked limitations in areas of social function, sustained concentration and pace and adaptation.  *PAGEID* 409-11.  They also noted that plaintiff would have fewer limitations if only minimal contact or interaction with others were required because plaintiff "demonstrates capability to focus and maintain attention on tasks when absent opportunities to socialize."  *PAGEID* 409-10.

The administrative law judge accorded "little weight" to the opinions of Dr. Nalluri and Ms. Wade "because they make[] conclusion[s] without identifying what their conclusions are based upon, are inconsistent with each other, and produce results that are contrary to the weight of the medical evidence, specifically the in depth and detailed assessments by" Dr. Reece and Dr. Marikis.  *PAGEID* 37.

The administrative law judge did not err in failing to apply the treating physician rule when evaluating Dr. Nalluri's opinion because

12

Dr. Nalluri does not qualify as a treating provider. Dr. Nalluri treated plaintiff on only two occasions; as discussed *supra*, such limited treatment is insufficient to establish an ongoing treatment relationship. *See Yamin*, 67 F. App'x at 885. Moreover, the administrative law judge's reasons for discounting Dr. Nalluri's opinion are supported by substantial evidence. Notably, Dr. Nalluri's opinion does not provide support for her conclusion that plaintiff has marked limitations in all areas of functioning; that conclusion is inconsistent with her actual treatment notes. *See PAGEID* 327-33.

Similarly, the administrative law judge did not err in failing to apply the treating physician rule when evaluating Ms. Wade's opinion because, as a psychological therapist, Ms. Wade is not a treating source under the regulations. *See Gayheart v. Comm'r of Soc. Sec.*, No. 12-3553, 2013 WL 896255, at *12 (6th Cir. Mar. 12, 2013) (citing SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006)); 20 C.F.R. §§ 404.1513, 416.913. Moreover, the administrative law judge's reasons for discounting Ms. Wade's opinion are supported by substantial evidence. The mental residual functional capacity questionnaire completed by Ms. Wade does not contain a narrative statement explaining her conclusions and the record does not contain treatment notes for any of Ms. Wade's appointments with plaintiff. *See PAGEID* 368-73, 409-12.

    **B.    Dr. Voyten and Dr. Hoyle**

Plaintiff argues that the administrative law judge failed to comply with Social Security Ruling 96-6p:

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and

13

> psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6p, 1996 WL 374180 (July 2, 1996). Plaintiff specifically argues that the administrative law judge failed to explain the weight accorded the opinions of state agency reviewers Voyten and Hoyle in accordance with the ruling. *Statement of Errors*, pp. 14-15.

The administrative law judge evaluated the opinions of Drs. Voyten and Hoyle, *see PAGEID* 36-37, and found that the opinions reinforced Dr. Marikis's and Dr. Reece's determinations that plaintiff has mild to moderate limitations in social function and in maintaining focus and attention. *PAGEID* 38. The administrative law judge further found that their "opinions represent the great weight of the medical evidence and strongly support the limitations as identified in the RFC." *Id*. It is apparent that the administrative law judge considered these experts' conclusions and that he accorded them substantial weight because they "represent the great weight of the medical evidence and strongly support the limitations as identified in the RFC." Although brief and unspecific, that explanation satisfies the requirements of SSR 96-6p. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

    **C.**    **Dr. Marikis**

Plaintiff also argues that the administrative law judge erred in evaluating Dr. Marikis' opinion. Dr. Marikis evaluated plaintiff

14

on February 17, 2009, for purposes of determining Medicaid eligibility. *PAGEID* 301-05. Dr. Marikis made an Axis I diagnosis of "[h]igh level malingering with fictitious disorder primarily psychological. He does show some patterns as consistent with attentional difficulties and delusional disorder. He also has a chronic dysthymic disorder." *PAGEID* 303. Dr. Marikis made an Axis II diagnosis of borderline personality disorder and assigned a GAF score of 45. *Id*. Dr. Marikis concluded that plaintiff's eligibility for Medicaid benefits is difficult to discern because "malingering is a factor in [plaintiff's] perception of self." *Id*. Nevertheless, he concluded that plaintiff "does not have the social capacity and interpersonal ability to manage the world of work. However, there very well may be aspects in which he could be affectively trained in the future to do." *Id*.

The administrative law judge gave "considerable weight" to Dr. Marikis' clinical examination because "it represents one of the only objective diagnostic assessments of claimant's condition in the medical record, is completed by an expert, and makes conclusions that are generally consistent with the weight of the objective medical evidence." *PAGEID* 35. "[L]ittle weight" was given, however, to Dr. Marikis' "conclusion regarding claimant's ability to work" because that conclusion is "contrary to the vast majority of the evidence which consistently notes only mild impairments and never mentions claimant[']s lack of ability to work." *PAGEID* 35-36.

Plaintiff argues that the administrative law judge erred by "purporting to give 'considerable weight' to the 'results of Dr.

Marikis's examination' yet rejecting the conclusions drawn by Dr. Marikis in favor of the ALJ's own conclusions." *Statement of Errors*, p. 15. Specifically, plaintiff contends that the administrative law judge "impermissibly played doctor" by rejecting Dr. Marikis' opinion that it was "very evident that Mr. Diemer does not have the social capacity and interpersonal ability to manage the world of work.'" *Id.* at pp. 15-16. According to plaintiff, it was improper for the administrative law judge to reject this "conclusion" and yet rely on Dr. Marikis' "data" in determining plaintiff's RFC. *Plaintiff's Reply*, p. 5. Plaintiff also argues that the administrative law judge failed to consider the mental RFC assessment completed by Dr. Marikis. *Statement of Errors*, p. 17. Plaintiff's arguments are without merit.

First, Dr. Marikis' "opinion that plaintiff was unable to work is tantamount to a disability opinion, a matter reserved to the Commissioner for determination." *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011). *See also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) ("The applicable regulations provide that a statement by a medical source that the claimant is 'unable to work' is not a 'medical opinion[;] rather, it is an opinion on an 'issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, *i.e.*, that would direct the determination or decision of disability.'") (quoting 20 C.F.R. § 404.1527(e)(1)). Accordingly, Dr. Marikis' opinion that plaintiff could not "manage the world of work" is, "as a matter of law, 'not given[n] any special significance.'" *Payne*, 402 F. App'x at 112.

16

Second, the administrative law judge did not reject Dr. Marikis' "conclusion" and rely solely on the "data" to determine plaintiff's RFC.  The administrative law judge rejected Dr. Marikis' vocational "conclusion regarding claimant's ability to work," but he also expressly adopted Dr. Marikis' medical conclusion that plaintiff "suffers from mild to moderate difficulties in social function and maintaining focus and attention."  *See PAGEID* 36, 38.  This is simply not a case in which the administrative law judge interpreted raw medical records without the assistance of medical opinions regarding a claimant's abilities.  *See Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008).  Further, the RFC determination is an administrative finding of fact reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004), and the administrative law judge, in formulating a claimant's RFC, is not required to parrot medical opinions *verbatim*.  Rather, an administrative law judge may adopt portions of a medical opinion and reject others in making an RFC determination.  *See Neace v. Comm'r of Soc. Sec.*, No. 5:11-cv-00202-KKC, 2012 WL 4433284, at *8 (E.D. Ky. Sept. 25, 2012); *Deaton v. Comm'r of Soc. Sec.*, No. 1:10-cv-00461, 2011 WL 4064028, at *6 (S.D. Ohio Sept. 13, 2011); *Carroll v. Comm'r of Soc. Sec.*, No. 1:09cv2910, 2011 WL 3648128, at *10 (N.D. Ohio Aug. 18, 2011).

Third, the administrative law judge's finding that Dr. Marikis' "conclusion regarding claimant's ability to work" is "contrary to the vast majority of the evidence which consistently notes only mild

17

impairments and never mentions [plaintiff's] lack of ability to work" is itself supported by substantial evidence.  As noted by the administrative law judge, *see PAGEID* 35, Dr. Reece and Dr. Voyten both opined that plaintiff suffered only minor impairments.  *See PAGEID* 309, 312-25.  Dr. Reece further found that plaintiff was of average intelligence, could live independently and could make decisions on a daily basis; on the day he was examined, plaintiff's mental ability to understand, remember and follow instructions was satisfactory and not impaired.  *PAGEID* 309.  Dr. Voyten noted that plaintiff "is functional, goes to the library, uses the internet, chats online, and essentially follows his interests freely."  *PAGEID* 325.

Dr. Marikis' opinion is also internally inconsistent:  after concluding that plaintiff could not work, Dr. Marikis went on to suggest plaintiff "could be affectively trained in the future to" work.  *See PAGEID* 303.

Finally, plaintiff's argument that the administrative law judge improperly failed to consider Dr. Marikis' mental RFC assessment is without merit.  The administrative law judge noted that Dr. Marikis "independently evaluated claimant's mental conditions and determined that claimant suffers from mild to moderate difficulties in social function and maintaining focus and attention."  *PAGEID* 38.  Dr. Marikis' narrative evaluation, which was extensively reviewed by the administrative law judge, was attached to his mental RFC assessment and was incorporated into that assessment as his explanation of the "observations and/or medical evidence [that] led to [the] findings" in the assessment.  *See PAGEID* 305.  It is clear that the administrative

law judge considered the limitations suggested by Dr. Marikis; he was not required to expressly address the proposed limitations individually. *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).

### D.     Dr. Reece

Plaintiff argues that the administrative law judge erred by assigning considerable weight to Dr. Reece's opinion because Dr. Reece opined that plaintiff had no severe psychological impairments. *Statement of Errors*, pp. 13-14. Plaintiff has not cited, and the Court has not found, authority for the proposition that an administrative law judge who determines that a claimant suffers severe impairments cannot also assign considerable weight to the findings of a medical professional who found no severe impairments. In the case presently before the Court, the administrative law judge was sufficiently specific as to the weight given to Dr. Reece's opinion and the reasons for assigning that weight. *See PAGEID* 36 (assigning "considerable weight" to Dr. Reece's opinion because he was a "licensed psychologist, the results are consistent with the weight of the objective medical evidence, and are consistent with the evidence in the rest of the file.").

Plaintiff also challenges the administrative law judge's assigning "no weight" to two Conners' Continuous Performance Test II tests in the record. *Statement of Errors*, pp. 11-13. The administrative law judge explained that he assigned no weight to these tests because they "are not signed by a medical professional of any type, contain no evidence of who administered the test and under what

19

conditions, and lacks an[] interpretive guidance as to the results." *PAGEID* 37.  This determination enjoys substantial support in the record.  *See PAGEID* 384-90.

In short, the Court concludes that the decision of the Commissioner applied all appropriate standards and is supported by substantial evidence.  That decision must, therefore, be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

June 19, 2013                                    *s/Norah McCann King*
                                                 Norah M$^c$Cann King
                                                 United States Magistrate Judge